FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 17, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

NOEL GUZMAN-HERNANDEZ,

Defendant.

No.    4:20-cr-06001-SMJ

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

On September 3, 2020, this Court heard argument on Defendant Noel Guzman-Hernandez's Motion to Dismiss, ECF No 36. Guzman-Hernandez moved to dismiss the indictment on the grounds that the predicate order of expedited removal was entered in violation of his due process rights. The Government contends that the recent Supreme Court decision in *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020), decimates years of both Supreme Court and Ninth Circuit jurisprudence. Because this result would clearly contravene the limited scope of the decision in *Thuraissigiam*, this Court grants Guzman-Hernandez's Motion to Dismiss.

//

//

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS – 1

**BACKGROUND**

Defendant Noel Guzman-Hernandez is charged with one count of illegal reentry after removal, 8 U.S.C. § 1326. He moves to dismiss the indictment because, he argues, the predicate order of expedited removal was fundamentally unfair, and thus invalid. ECF No. 36 at 1.

Guzman-Hernandez is a thirty-nine-year old undocumented immigrant from Mexico. ECF No. 20 at 2. He lived in Mexico until he was a teenager, when he, his mother, and his siblings moved to the United States to live with his father. ECF No. 36-1 at 1. His father, a legal permanent resident in the United States, petitioned for Guzman-Hernandez's legal status, but he never obtained legal status because he moved out of his parents' home when they separated—about two years after he moved to the United States. *Id.* at 1–2. His mother and siblings now have legal status and lived in the country in April 2010. ECF No. 20 at 2.

Guzman-Hernandez has had three encounters with immigration authorities that have resulted in his voluntary return to Mexico. ECF Nos. 36-1, 36-2. The last of these encounters was in January 2010, when Guzman-Hernandez was in custody at the Wapato City Jail for a negligent driving offense. ECF No. 36-2. Immigration authorities took custody of him, and he was transported to Tacoma and served with a Notice to Appear to initiate formal removal proceedings. An immigration judge

granted his application for voluntary departure to Mexico, which occurred a few days later. ECF Nos. 36-3, 36-4.

In April 2010, immigration officials again detained Guzman-Hernandez near Nogales, Arizona, approximately three-quarters of a mile from the border. ECF No. 36-7 at 2. The case was processed as an expedited removal. ECF No. 36-6 at 3. Guzman-Hernandez states that he was not told that it was an expedited removal, and that he thought that it was a voluntary departure. ECF No. 36-1 at 4–5. Guzman-Hernandez gave a Sworn Statement in an interview conducted by Agent Gilbert Serna. ECF No. 36-7. Agent Serna recorded Guzman-Hernandez's responses on form I-876A, which ran two pages, each of which Guzman-Hernandez initialed. ECF No. 36-7. Guzman-Hernandez then signed and initialed the one-page form I-867B, known as the "Jurat," which is intended to accompany the form I-867A, attesting that: "I have read (or have had read to me) this statement, consisting of : _1_ pages (including this page)." ECF No. 36-7 at 3. Guzman-Hernandez's statement does not discuss his immigration history or his prior removals. ECF No. 36-7. Guzman-Hernandez told the Agent Serna that he was visiting family in the United States, but no questions were asked about what family he had in the country. ECF No. 36-7 at 3. Agent Serna noted in the Form I-831 report of the incident that he read and explained Form I-867A and I-867B to Guzman-Hernandez. ECF No. 36-6 at 2.

Guzman-Hernandez also signed a "Notice of Rights" written in Spanish. ECF No. 36-8. He initialed the option admitting he was illegally present in the United States, waiving his right to a hearing, and requesting to return to Mexico as soon as possible. *Id.* This document does not state that Guzman-Hernandez was being processed as an expedited removal. *Id.* Agent Brian Gotowko discussed this Notice with Guzman-Hernandez in Spanish. ECF No. 37-1 at 2.

Agent Serna then prepared a Notice and Order of Expedited Removal, Form I-860. ECF No. 36-9. Guzman-Hernandez did not initial or sign this form. *Id.* Yet it appears that Agent Serna signed the form stating that it was personally served upon Guzman-Hernandez. *Id.*

Guzman-Hernandez was removed to Mexico the same day, April 25, 2010. In December 2019, immigration officials encountered Guzman-Hernandez in the United States, leading to the instant prosecution.

## DISCUSSION

### A.    Legal Standard in the Ninth Circuit

A defendant charged with illegal reentry can defend against the charge by attacking the validity of the prior removal. *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004)). To sustain such an attack, a defendant must demonstrate that (1) he "exhausted any administrative remedies that may have been

available to seek relief" from the predicate removal order, (2) the deportation proceedings "improperly deprived [the defendant] of the opportunity for judicial review," and (3) the removal order was "fundamentally unfair." 8 U.S.C. § 1326(d).

As to the first and second requirements, expedited removals of inadmissible arriving noncitizens do not provide for administrative review except in the instance of a noncitizen claiming asylum or claiming to be a legal permanent resident. 8 U.S.C. § 1225(b)(1)(C); *see United States v. Barajas-Alvarado*, 655 F.3d 1077, 1081 (9th Cir. 2011); *see also Raya-Vaca*, 771 F.3d at 1202 (finding defendant exhausted available administrative remedies and was deprived of judicial review in expedited removal proceeding with no opportunity for administrative or judicial review). Thus, a defendant removed through expedited removal proceedings can prevail by showing that entry of the removal order was fundamentally unfair. *Raya-Vaca*, 771 F.3d at 1202. To show fundamental unfairness in the Ninth Circuit, the defendant must show that (1) entry of the order violated his right to due process, and (2) he suffered prejudice as a result. *Raya-Vaca*, 771 F.3d at 1202. The Government now asks this Court to apply *Thuraissigiam* to the facts in this case. For the reasons set forth below, its efforts are misguided.

//

//

//

1

2

**B.    The Supreme Court's decision in *Thuraissigiam* does not affect the legal standard in this case**

3

4

On June 25, 2020, the Supreme Court held that Constitutional Due Process rights do not apply to civil habeas proceedings for immigrants detained within 25 yards of the border attempting to enter the United States unlawfully. *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020). The noncitizen respondent in *Thuraissigiam* was encountered and detained by a Border Patrol agent approximately 25 yards from the U.S.-Mexico border. An asylum officer and a supervising officer reviewed his case and determined he lacked a credible fear of persecution. An immigration judge affirmed on appeal. *Id.* at 1967–68. The noncitizen then filed a federal habeas petition seeking review of his asylum claim. The Supreme Court held that denying habeas review violated neither the suspension nor the due process clause. *Id.* at 1968. With respect to due process, the Supreme Court held constitutional protections did not apply because "an alien who is detained shortly after unlawful entry cannot be said to have effected an entry." *Id.* at 1982–83 (internal citation omitted). This decision partially abrogated *Raya-Vaca* to the extent that it had been applied to civil asylum proceedings with someone detained 25 yards from the border. *Id.* at 1968.

The Government argues that this creates a heightened standard of causation— that the defendant would need to show a direct link between any violations of his

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

procedural rights and the resulting prejudice. This Court concludes that the partial

abrogation of *Raya-Vaca* does not impact the analysis here.

### 1. In *Thuraissigiam*, the Supreme Court did not, nor did it intend to, hold that non-citizens have no Due Process Rights

The Supreme Court has long held that non-citizens found in the United States

have constitutional rights. In *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), the Supreme

Court reasoned that the "rights of the petitioners . . . are not less because they are

aliens and subjects of the emperor of China." *Id.* at 368. Almost a century later, in

*Plyler v. Doe*, 457 U.S. 202, 210 (1982), the Supreme Court held that "[w]hatever

his status under the immigration laws, an alien is surely a 'person' in any ordinary

sense of that term. Aliens, even aliens whose presence in this country is unlawful,

have long been recognized as 'persons' guaranteed due process of law by the Fifth

and Fourteenth Amendments." *See also Mathews v. Diaz*, 426 U.S. 67, 77 (1976)

("The Fifth Amendment, as well as the Fourteenth Amendment, protects every one

of these persons from deprivation of life, liberty, or property without due process

of law. Even one whose presence in this country is unlawful, involuntary, or

transitory is entitled to that constitutional protection.") (internal citations omitted).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But, once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS – 7

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (internal citations omitted). The Supreme Court declined to overturn any of these cases in *Thuraissigiam*. In fact, on June 29, 2020, just four days after it decided *Thuraissigiam*, the Supreme Court reiterated that "foreign citizens *in the United States* may enjoy certain constitutional rights." *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 140 S Ct. 2082, 2086 (2020) (emphasis in original).  This court sees no reason to deny non-citizens due process rights in non-asylum cases when the Supreme Court has chosen not to do so.

Thuraissigiam was found 25 yards from the border. Guzman-Hernandez was detained three-quarters of a mile from the border. The Supreme Court did not intend to allow for the parade of horribles that stems from expanding the zone of constitutional inapplicability beyond the 25 yards in *Thuraissigiam*. Would an immigrant whose first stop upon entering the United States was to go to Sacred Heart Parish for church services in Nogales, Arizona, 0.4 miles from the U.S.-Mexico border, be denied Due Process rights because they happened to be inside this amorphous zone? What about stopping for fast food at Burger King in Nogales, a mere 0.2 miles from border? Would American citizens living near the border "leave" the United States when they order from that Burger King or attend Sacred Heart services? Of course the Supreme Court did not intend such a result. It is disingenuous to argue that, for the purposes of determining whether the immigrant

has "affected an entry," the area near the border, but outside the 25-yard *Thuraissigiam* zone, is not the United States. Under the government's analysis, this court would need to arbitrarily set a zone of constitutional inapplicability to non-citizens along the border. If the Supreme Court had intended to overturn more than a century of precedent, it would have said so. It did not.

### 2. The habeas proceeding at issue in *Thuraissigiam* is fundamentally different from the criminal Section 1326 proceeding in this case

The imposition of criminal penalties under 8 U.S.C. § 1326 based on a prior administrative proceeding violates due process unless there is "*some* meaningful review of the administrative proceeding." *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987). In response to this decision, Congress added Section 1326(d), under which Guzman-Hernandez brings this instant motion. *See U.S. v. Gonzalez-Flores*, 804 F.3d 920 (9th Cir. 2015). *Thuraissigiam* does not mention *Mendoza-Lopez*, nor does it mention Section 1326.

Since *Thuraissigiam*, other courts have reached the same, inevitable conclusion. In *United States v. Angulo-Gomez*, 1:19-cr-00061 EAW, 2020 WL 4434917 at *3 n. 2 (W.D.N.Y August 3, 2020), for example, the court determined that it could review expedited removal proceedings in a criminal action because *Thuraissigiam* "addresses only asylum seekers seeking direct review of their expedited removal proceedings and does not speak to *Mendoza-Lopez* or defendants

facing criminal charges who are collaterally attacking expedited removal proceedings." There, the parties conducted supplemental briefing on *Thuraissigiam*. In its brief, the Government conceded that *Thuraissigiam* did not "affect the case in any meaningful way" and that the relevant portions of *Raya-Vaca* "were not in any way altered by the Supreme Court's decision in *Thuraissigiam*." *See* ECF No. 48-2 at 2–3. The Northern District of California came to the same result, concluding that *Thuraissigiam* "abrogated the holding in *Raya-Vaca* to the extent that it held that the Due Process Clause applies to an alien who succeeded in making it 25 yards into the United States before being apprehended." *United States v. Gonzales-Lopez*, No. CR-18-00213, 2020 WL 5210923 at *6 n. 1 (N.D. Cal. September 1, 2020). The court there reasoned that "violations of statutorily defined due process rights (as opposed to constitutionally defined due process rights) may result in a 'fundamentally unfair' removal order. . . . otherwise relief under 1326(d) would be rendered illusory." *Id.*; *see also United States v. Rivera-Valdes*, No. 3:19-cr-00408, 2020 WL 4606661 (D. Or. August 11, 2020) (applying the *Raya-Vaca* test to a Motion to Dismiss a Section 1326 charge, noting but not analyzing the partial abrogation of *Raya-Vaca* in *Thuraissigiam*); *United States v. Castellanos-Avalos*, No. 2:19-cr-135-RMP-1, 2020 WL 4606665, (E.D. Wash. August 11, 2020) (applying the *Raya-Vaca* test, but not citing *Thuraissigiam*). The *civil* asylum proceedings in *Thuraissigiam* are distinguishable from the *criminal* action here.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS – 10

Section 1326(d) may have been added to the Illegal Entry After Removal statute in response to the Supreme Court's decision in *Mendoza-Lopez*, but the language now stands on its own. Outside of the scope of the Due Process Clause of the Constitution, Section 1326(d) provides statutory due process protections to defendants. Even if the Supreme Court meant to abrogate the constitutional rights of non-citizens, which this Court doubts, Congress may of course provide additional rights and protections. It has done so here. Under Section 1326(d), non-citizens are afforded additional protections in the criminal context: namely, that the prior removals were not fundamentally unfair. This statutory scheme recognizes that, while both are certainly serious, deportation and incarceration are entirely different penalties. In many areas of our legal system there is a recognition that greater protections should be afforded in the criminal context than in other contexts—even immigration proceedings. Since Section 1326 subjects a noncitizen to the United States criminal justice system, Section 1326(d) grants such additional statutory protections.  It is not for this court to challenge Congress' conclusion when they are acting within the boundaries of their constitutional authority.

Once a noncitizen has been charged under Section 1326, they are no longer transient strangers to this country. They will spend months, if not years, in legal proceedings in this country. They will live in this country and sit in jail or be released on bond in this country. They will be subject to the intricacies of the criminal justice

system in this country. After all of that, they have "established connections in this country." *See Thuraisigiam*, 140 S. Ct. at 1964. While the lower court improperly applied *Raya-Vaca* and procedural due process rights in *Thuraissigiam*, they remain relevant here. This Court thus applies the *Raya-Vaca* analysis to Guzman-Hernandez's motion.

## C.    Guzman-Hernandez has demonstrated a due process violation

Guzman-Hernandez argues the April 25, 2010 expedited removal process violated his due process rights for three reasons: (1) he was not informed that he was in removal proceedings, (2) he was not allowed to review his sworn statement or have the statement read to him prior to signing, and (3) he did not sign the reverse side of the I-860 form. ECF No. 36. The Government concedes that Guzman-Hernandez was not given the opportunity to review his sworn statement or sign the reverse side of the I-860 form. ECF No. 37 at 9. Because this Court finds Guzman-Hernandez was not given the opportunity to review his sworn statement or sign the reverse side of the I-860 form in violation of his due process rights, this Court need not reach Guzman-Hernandez's argument that immigration did not inform him he was in formal removal proceedings.

In an expedited removal proceeding, the immigration officer is required to "record the alien's response to the questions contained on Form I–867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS – 12

initial each page of the statement and each correction." 8 C.F.R. § 253.3(b)(2)(i). This Court has previously noted that in the context of an expedited removal proceeding, the opportunity to review the sworn statement is especially important because this single safeguard is often both the only opportunity for the alien to respond to the charge against him and the only record of the proceedings. *See United States v. Vicente-Vasquez*, No. 1:19-CR-02030-SMJ, ECF No. 35 at 8; *see also Raya-Vaca*, 771 F.3d at 1202 ("Due process always requires, at a minimum, notice and an opportunity to respond.") (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

Likewise, immigration officers must advise the noncitizen of the charge against him or her on Form I-860. *See* 8 C.F.R. § 235.3(b)(2)(i). After obtaining a supervisor's approval, the immigration officer must then "serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt." *Id.* A defendant may show a due process violation by showing that the I-860 Form was not signed as required by 8 C.F.R. § 235.3(b)(2)(i). *See United States v. Hernandez-Rodriguez*, No. 2:18-CR-00197-RHW, 2019 WL 1508039, at *4 (E.D. Wash. Apr. 5, 2019). "As Form I-860 provides notice to Defendant of his rights, a missing signature on that page undermines the assurance that he was notified of his due process rights at the time of his removal." *United States v. Mejia-Avila*, No. 2:14-CR-0177-WFN-1, 2016 WL 1423845, at *1 (E.D. Wash. Apr. 5, 2016). Although

it is unnecessary for this Court to delve deeply into this second due process violation, the lack of attention to procedural safeguards paid by the border patrol agents further convinces this Court that Guzman-Hernandez's rights were not protected in this case.

## D.    Guzman-Hernandez has shown he suffered prejudice

A defendant may establish prejudice by showing that, but for the due process violation, there were "plausible grounds for relief" from the removal order. *Raya-Vaca*, 771 F.3d at 1202–06. One form of such relief is the border agent's discretionary decision to permit the alien to "withdraw" his application for admission to the country implied from his presence in the country, known as granting the alien "voluntary departure" rather than forced removal, or "withdrawal." *Id* at 1206, 1210. (citing 8 U.S.C. § 1225(a)(4)).

Relief from removal need not be established to a certainty—only shown to be "plausible"—although the alien cannot prevail by showing a mere "theoretical possibility" that relief would have been granted. *Id.* at 1207. To assess the plausibility of withdrawal being granted, Courts look to the factors given to immigration officials meant to guide them in making the decision:

> (1) the seriousness of the immigration violation;
> (2) previous findings of inadmissibility against the alien;
> (3) intent on the part of the alien to violate the law;
> (4) ability to easily overcome the ground of inadmissibility;
> (5) age or poor health of the alien; and
> (6) other humanitarian or public interest considerations.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS – 14

*Id.* at 1207. Withdrawal should "ordinarily" not be permitted "in situations where there is obvious, deliberate fraud on the part of the applicant." *Id.* (citing *Barajas-Alvarado*, 655 F.3d at 1091).

In *Raya-Vaca*, several factors informed the Ninth Circuit's conclusion that withdrawal was plausible. *Id.* at 1208. Factors weighing against plausibility included the alien's extensive history of immigration violations and his relative youth and good health. *Id.* But because the alien had not committed fraud, and because members of his family, including a long-term partner and mother, lived in the United States, the panel found that relief was plausible.[1] *Id.*

The Government concedes that relief was plausible in this case. *See* ECF No. 37 at 27–28. Guzman-Hernandez, at thirty-nine years old, is relatively young, a factor which undermines the plausibility of withdrawal. *See Raya-Vaca*, 771 F.3d at 1208 (thirty-three-year-old defendant, in good health, weighed against plausibility). Still, there is no evidence that Guzman-Hernandez committed fraud in attempting to enter the country without authorization, and he has some ties to the country in family members (his father, mother, and two siblings who are permanent residents) that reside here legally. ECF No. 20 at 2. Moreover, at the time of his

---

[1] The panel also considered other factors, including the alien's minimal criminal history and statistics showing that withdrawal was commonly granted under similar circumstances. *Id.* at 1209.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS – 15

removal, Guzman-Hernandez had little criminal history—one conviction for negligent driving—and his immigration history was limited to a handful of voluntary removals, while the defendant in *Raya-Vaca* had an extensive history of unauthorized reentry. *See* ECF No. 36-2 at 2; 771 F.3d at 1208. Guzman-Hernandez's eligibility for withdrawal is thus similar to—or perhaps more favorable than—the defendant in *Raya-Vaca*.

Guzman-Hernandez's eligibility for withdrawal was just as favorable as in *Raya-Vaca* and he has shown it is plausible he could have been granted voluntary withdrawal of his application. As such, Guzman-Hernandez has shown prejudice.

## CONCLUSION

The Government argues that even without the due process violations, Guzman-Hernandez still would have been removed. Unfortunately, this Court can only speculate as to what might have occurred had the Border Patrol Agency followed the procedures set forth by law. Those procedures are not there to create red tape; they are there to protect non-citizens from unfair, unjust, and possibly unconstitutional results. When the government flagrantly ignores procedural due process protections, a person's rights become uncertain and, in fact, illusory. Guzman-Hernandez has successfully shown that the order of removal underlying this prosecution was entered in violation of his right to due process because he was not allowed to review the statements he allegedly made prior to removal. And

because Guzman-Hernandez has shown that he was a plausible candidate for withdrawal, he has demonstrated that the violation resulted in prejudice. Therefore, the removal order was fundamentally unfair, and the indictment must be dismissed.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss, **ECF No. 36**, is **GRANTED**.

2. The Clerk's Office is directed to **CLOSE** the file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshals Service.

**DATED** this 17th day of September 2020.

SALVADOR MENDOZA, JR.
United States District Judge